STANDARD MULTIWALL BAG MANU-
FACTURING CO., an Oregon corpora-
tion; and The Taian Insurance Compa-
ny, Limited, Plaintiffs,

v.

MARINE TERMINALS CORPORATION,
a Nevada corporation, and The Port of
Portland, an Oregon municipal corpora-
tion, Defendants.

Civil No. 94–1276–RE.

United States District Court,
D. Oregon.

Jan. 19, 1996.

Mary Ellen Page Farr, Neisha A. Saxena, Kell, Alterman & Runstein, Portland, for plaintiff Standard Multiwall Bag Manuf. Co.

Dean D. DeChaine, Steven F. Hill, Miller, Nash, Wiener, Hager & Carlsen, Portland, for plaintiff The Taian Insurance Co., Limited.

John Dudrey Williams, Fredrickson & Stark, P.C., Portland, for defendants.

## OPINION

REDDEN, District Judge:

### BACKGROUND

Plaintiffs, Standard Multiwall Bag Manufacturing Company (Standard), an Oregon corporation and The Taian Insurance Company, Ltd. bring suit against Marine Terminals Corporation (MTC), a Nevada corporation, and The Port of Portland (Port), an Oregon municipal corporation. This opinion resolves issues arising from damage to a piece of bag-making equipment that was shipped from Taiwan to Portland aboard Evergreen America Corporation's (Evergreen) vessel, EVER RIGHT. The equipment was damaged on March 9, 1994, at Port's Terminal 6.

Standard filed on September 22, 1994, in state court alleging negligence and bailment, naming both MTC and Port as defendants. The case was removed by defendants who assert that the case is controlled by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300. Standard now moves to remand asserting that COGSA does not apply. Defendants then moved for partial summary judgment and Standard filed a supplemental motion, following discovery, on November 3, 1995. Defendants motion for partial summary judgment, if granted, would result in judgment for plaintiffs under COGSA totaling $1,500.

### FACTS

The facts are not in dispute. Standard ordered equipment which was custom designed and constructed in Taiwan. The equipment was shipped from Taiwan aboard the EVER RIGHT, a container ship owned and operated by Evergreen. The shippers, Tung Kwang, arranged the shipment with Standard. The bill of lading required shipment from Taiwan to Portland, Oregon. Evergreen's Arrival Notice and Freight Bill also indicates that Evergreen's obligation is only to deliver the equipment to the Port. The container at issue was an open flat rack which contained three large wooden crates.

The EVER RIGHT arrived at Terminal 6 on March 7, 1994, docked and unloaded. The flat rack was taken to a storage area a distance from the dock area and next to the terminal gateway.

Standard arranged for Wilhelm Trucking to pick up the flat rack, and on March 9, 1994, the driver drove to the storage area. He was told by a MTC stevedore, under contract to the Port, that he should return to the gate and wait for the stevedore to deliver the equipment. The stevedores, and members of the Port staff damaged the equipment in two incidents while attempting to move it to the gate area.

### PLAINTIFFS' MOTION TO REMAND

■ Plaintiffs' motion to remand is denied. I find that COGSA applies. The shipment was made under Evergreen's bill of lading. See plaintiff's Ex. 1. The "Clause Paramount" contained in paragraph five of the bill of lading governs the period of time during which COGSA is applicable:

(A) Clause Paramount—... The provisions cited in the Hague rules and COGSA (except as may be otherwise specifically provided herein) shall also govern before the Goods are loaded on and after they are discharged from the ship provided, however, that the Goods at said time are in the actual custody of the Carrier....

The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or misdelivery, or loss of or damage to the Goods howsoever caused occurring while the Goods are not in the actual custody of the Carrier.

Plaintiffs argue that the equipment had been constructively delivered prior to the damage. Plaintiffs argue that the bill of lading provided for shipment "port to port," and point out that the container had been discharged to a fit wharf; segregated in a separate area of Terminal 6; Standard had been notified that its cargo had arrived and been released by Evergreen to Standard or its overland carrier; Standard's overland carrier had already picked up two other containers; and Standard's overland carrier was at the appropriate area for defendants to load the flat rack.

Defendants point out that the Equipment Interchange Receipt (EIR) is a "generic"

Port form approved by its customers, including Evergreen. Port's custom is to require the trucker to sign an EIR as a receipt, thereby acknowledging delivery and ending the responsibility of the Port and carrier. The EIR was never signed. The equipment was damaged before it was loaded on the truck. Loading the equipment precedes the trucker's signing or the EIR.

"[I]t [is] advisable to keep sea carriers to the standard imposed by the Harter Act until goods are in the hands of land carriers and actually leaving the maritime arena. With COGSA covering carriers; legal responsibilities through discharge, Harter fills a potential gap between discharge and inland transit in those situations where goods, though on the dock, are still within the control and responsibility of the sea carrier." *Jagenberg. Inc. v. Georgia Ports Authority,* 882 F.Supp. 1065, 1078–79 (S.D.Ga.1995). In that case the goods were damaged at the port and before loading onto the trucks—the court found that no proper delivery had occurred. *Id.* at 1078. The court specifically noted that it did not find the "five day period between discharge and damage particularly relevant." *Id.* The court stated that "proper delivery by the sea carrier happened when cargo held at the port was loaded onto trucks, and not before." *Id. See also, Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734 (4th Cir.1993).

*Jagenberg* and *Wemhoener* held that responsibility should pass only when the consignee's trucker receipts for the cargo while departing the terminal.

*The Himalaya Clause.* Paragraph four of the bill of lading is a "Himalaya Clause," which extends the ocean carrier's bill of lading defenses and liability limitations to third parties performing services on its behalf. *Mori Seiki USA v. M.V. Alligator Triumph,* 990 F.2d 444, 450 (9th Cir.1993). Paragraph 4(2) provides bill of lading limitations of liability on behalf of terminal operators, stevedores, and "all other independent contractors whatsoever," whether they are liable as carrier, bailee, or in any other capacity. Paragraph 4(3) extends defenses and limitations to indirect contractors:

The expression "sub-contractors" in this clause shall include direct and indirect subcontractors and their respective servants and agents.

Thus, both the Port, to whom Evergreen subcontracted its responsibility to provide stevedoring and terminal services, and MTC, with whom the Port in turn contracted to provide the longshore labor required to come within the scope of the Himalaya Clause. The bill of lading satisfies the test of specificity required. *See Taisho Marine & Fire Ins., Co. v. Vessel Gladiolus,* 762 F.2d 1364, 1366–67 (9th Cir.1985).

The bill of lading is not limited to contractors that Evergreen "uses or employs." It applies to "all other independent contractors whatsoever," including at least these defendants who unload, store, handle, and deliver the cargo. A direct contractual relationship with Evergreen is not required. MTC performed services for Evergreen that Evergreen had contracted for with the shipper and consignee. Standard's cargo was damaged during the performance of these services.

The Himalaya Clause extends the benefits and limitations of COGSA to defendants until the container was delivered to Standard or its consignee. The cargo had not been delivered pursuant to the terms of the bill of lading, until after the damage. Therefore COGSA limitations apply and limit defendants' liability to $1,500.

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' motion to remand is denied because COGSA controls and jurisdiction is vested in this court. Therefore, defendants' motion for partial summary judgment is granted.

In response to that motion, plaintiffs attempt to show that the "delivery" of the flat rack occurred when it was taken to the Port's storage area. I reject plaintiffs' argument that the flat rack was then and there at the trucker's "disposal." It was not available at any time *before* it was taken off the Port's chassis. The chassis cannot be used beyond Terminal 6.

Plaintiffs next argue that only the Port has the benefits of the bill of lading because only the Port had a direct contractual relationship with Evergreen. I find no requirement that one must be an agent of the carrier or be in a direct contractual relationship with it, to so benefit. *Taisho Marine, supra.*

Finally, plaintiffs assert that MTC is excluded because it is not a stevedore. This is a strained reading of the bill of lading. It states its intent to contract for "all terminal operators, stevedores, and all other independent contractors whatsoever," engaged in "unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the goods." Bill of Lading, para. 4(1). MTC falls within that broad protection. Plaintiffs offer no authority that MTC cannot be considered a stevedore.

Defendants' motion for partial summary judgment is granted. Plaintiffs failed to declare a higher cargo value and pay a higher freight, so the package limit contained in the bill of lading applies (para.7(2)). The Carrier is liable only for any damage up to $500 per package. The parties agree that there are three packages at issue and damages are thereby limited to $1,500.